UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                    07 CR 460 (SJ)

        v.

                                                                    ORDER IMPOSING
                                                                    SANCTIONS


JOHN MORALES,

                Defendant.

--------------------------------------------------X

A P P E A R A N C E S
UNITED STATES ATTORNEY
Benton J. Campbell
271 Cadman Plaza East
Brooklyn, NY 11201
By:     Grace Cucchissi


LAW OFFICES OF E. ABEL ARCIA
82-17 Roosevelt Avenue
Jackson Heights, NY 11372
By:     E. Abel Arcia


GROSSMAN & RINALDO
108-18 Queens Boulevard, 8th Floor
Forest Hills, NY 11375
By:     Paul Rinaldo


JOHNSON, Senior District Judge:

        Defendant John Morales ("Defendant" or "Morales") was arrested on June

15, 2007, after being indicted for four narcotics-related charges. The Law Offices

1

of E. Abel Arcia ("Arcia") was retained to represent Morales and, accordingly, Arcia filed a notice of appearance on June 19, 2007. Ernest Atalay ("Atalay"), then an attorney with Arcia's firm, also made appearances before this Court on behalf of Morales. Atalay initially appeared as a stand-in for Arcia, and did not file a notice of appearance. However, both Arcia and Atalay made subsequent appearances on behalf of Morales. More notable for the purposes of this order are the times that both Arcia and Atalay failed to appear.

On November 13, 2007, neither attorney appeared with Morales at a status conference. On November 15, 2007, Atalay made his first appearance in this case and informed the Court that Arcia's wife recently had a baby. The Court told Atalay,

| | |
|---|---|
| The Court: | That's nice but he also has a client, and he should give the client and the Court the courtesy of saying "I have this personal problem." |
| Atalay: | Absolutely. |
| The Court: | It's really no excuse on his behalf. |
| Atalay: | I'm just the messenger, your Honor. I will relay the Court's position to Mr. Arcia. I'm sure he is aware of it. |
| [. . .] | |
| The Court: | Tell your colleague he better be here. |
| [. . . ] | |
| The Court: | I have had situations such as he's having, and I remember I took my infant down to court when I was a police officer, okay. So he's got no excuse. |

| Atalay: | I understand, your Honor.  I will let him know. |
|---|---|
| The Court: | But not so much me, although it's me also, but he's got a client here. |

(Tr. of 11/15/07 Proceedings, at 2:18-4:4.)

At a March 5, 2008 conference, neither Arcia nor Atalay appeared for Morales.  Consequently, the conference was adjourned to April 4, 2008, wherein Atalay appeared and represented that plea negotiations were ongoing. The Court set another status conference for May 15, 2008.  Informed that plea negotiations had failed, the Court set jury selection and trial, to commence on September 8, 2008. The parties were directed to file any in limine motions by August 18, 2008.

On July 22, 2008, the government moved to hold a status conference at the Court's earliest convenience.  (Docket No. 19.)  According to the government, Morales' case had just been reassigned to new Assistant United States Attorney ("AUSA"), Sylvia Schweder ("AUSA Schweder"), who, despite several attempts, was unable to get in touch with either Arcia or Atalay.  A hearing was immediately scheduled for the purpose of aiding the government in reaching defense counsel.

On August 18, 2008, the government moved to admit tape-recorded conversations between Morales and an alleged co-conspirator.  No opposition from Arcia or Atalay followed.

On August 21, 2008, the government filed a superseding indictment.  The only difference between the original indictment and the superseding indictment is

the length of the conspiracies charged.  Specifically, the original indictment charged Morales with conspiring to import and posses heroin on or about November 5, 2006 (Counts One and Three, respectively).  Counts One and Three of the superseding indictment charged Morales with committing these two crimes "[o]n or about and between January 1, 2006 and November 5, 2006."  The indictments are otherwise identical.  (<u>Compare</u> indictment <u>with</u> superseding indictment.)

Despite the relative insignificance of these changes, Atalay, on August 29, 2008, filed a letter requesting an adjournment of trial based on his desire to "explore the possibility of a disposition in light of this new development."  (Docket No. 27.)  Defense counsel had not conferred with the government before filing this letter.  (<u>See</u> Docket No. 35 at 2 ("With no notice to the government, the defendant filed a letter to requesting an adjournment . . . to explore 'plea negotiations.'"))

The Court (unaware at that time that plea negotiations had not resumed) adjourned trial and set a status conference.  At the conference, the government indicated that there would not be a plea disposition in this case.  Atalay requested additional time to address any <u>in limine</u> motions and was given until October 14 to file same.  (Docket No. 33.)  A November 7, 2008 status conference was set, and the Court indicated that a trial date would be selected thereat.

Four days after that October 14 deadline to submit <u>in limine</u> motions, Atalay moved the Court for an audibility hearing on the tape-recorded

conversations that the government, in its August 18 letter, stated its intention of admitting into evidence. The government opposed this motion based on, <u>inter alia</u>, its untimely filing, and the fact that the case had then been pending for 16 months. (Docket No. 35.)

Atalay and Arcia failed to appear when the matter was called on November 7, 2008. No request to adjourn had been filed. Morales informed the Court that he had "just found out" that Arcia would not be appearing, and offered the Court a letter he received from Arcia's assistant. Morales was told,

> You get in touch with your lawyer. Your lawyer is supposed to notify chambers 48 hours in advance if he wants an adjournment. You tell your lawyer that we will call the case again this afternoon at 2:00. He is right across the East River at 26 Federal Plaza. Your lawyer and his firm have a habit of doing this.

(Tr. of 11/7/08 Conference at 2:12-19.)

At the 2:00 second call of this case, Atalay appeared. He explained that he was in immigration court and was admonished as to the importance of his timely arrival, absent a properly-filed motion to adjourn:

> The Court: But the date for this morning was set about a month ago. And the fact that you weren't here, that's no excuse.
>
> Atalay: I understand. And I have no excuse other than the explanation I provided.
>
> The Court: If you weren't here you should have had somebody else here because you have wasted your client's time, you have wasted the government's time, and you have wasted my time.
>
> Atalay: Judge, I have no response.

| The Court: | And it wouldn't be so bad, but it's several times that this has happened.  I will accept your explanation and your apology, if that's what it is. |
|---|---|

(Tr. of 11/7/08 Proceedings at 4:23-5:10.)

The Court then granted Defendant's request for an audibility hearing, exercising an abundance of caution in protecting Morales' rights.

Jury selection and trial began on December 9, 2008, with Atalay representing Morales.  The jury found Morales guilty of all four counts alleged in the superseding indictment on December 15, 2008, and sentencing was set for February 2, 2009.

*Sentencing I*

On January 29, 2009, Atalay wrote to the Court requesting an adjournment of sentencing.  Specifically, Atalay's letter indicated that "a probation pre-sentence report ['PSR'] has not been completed or submitted to counsel."  (Docket No. 51.) The Court adjourned sentencing to March 26, 2009.

Sometime between January 29 and the March 26 appearance, Atalay left Arcia's law firm.  On March 25, 2009, Arcia wrote to the Court asking that it "direct us on how to proceed" in light of Atalay's departure from his firm and Morales' upcoming sentencing (the "March 25 Letter"). (Docket No. 53.)  Arcia's letter stated that "[i]t is apparent that since [Atalay] handled the case and conducted the trial, it is in [Morales'] best interest for Mr. Atalay to represent him at

sentencing." (Id.)  Additionally, the letter stated that Atalay had not received a

copy of the PSR[1] or "notice of tomorrow's sentencing hearing." (Id.)  The letter

did not request an adjournment of sentencing, nor did the letter comply with the

requirements of the undersigned's individual rules for requests to adjourn (the

"Individual Rules").  The March 25 Letter did not list Atalay as a member of

Arcia's firm.

In response to the March 25 Letter, the Court directed Arcia to appear,

citing the fact that only Arcia had filed a notice of appearance and, as a result, the

Court considered him counsel of record.  After the entry of this order, Arcia filed a

request to change the time of the March 26 sentencing (the "March 26

Conference") to the afternoon, based on a conflict.  Because neither letter was filed

in compliance with the Individual Rules, counsel was again reminded to comply

therewith.  At the March 26 Conference, at which Arcia appeared by phone, the

Court inquired as to why the PSR was delayed given the December conviction.

Neither the assigned attorney for the government nor the assigned probation officer

---

[1] Throughout the month of March 2009, United States Probation Officer Jennifer Fisher
("USPO Fisher") attempted to schedule Morales' pre-sentence interview.  She spoke with
Arcia on March 3, and was told that Atalay would represent Morales at sentencing.
Immediately thereafter, Fisher contacted Atalay, whose voice mailbox was full.  She
finally had a conversation with Atalay on March 9, wherein he said the opposite.  Fisher
made several calls to Arcia between March 9 and April 1 to resolve this issue but he did
not return her calls.  Under these circumstances, the statement that Atalay had merely "not
received" a copy of the PSR is, at best, an extremely incomplete description of the
problem, and, at worst, an attempt to hide from the Court the roles Atalay and Arcia played
in delaying the PSR.

were present that day.  The following colloquy ensued with their respective stand-ins:

| | |
|---|---|
| [AUSA]: | So, I'm not exactly sure when the Probation Department will be preparing its Pre-Sentence Report. |
| The Court: | When was the conviction? |
| [AUSA]: | The conviction was in December.  I'm not exactly sure of the date. Maybe Mr. Arcia could be of assistance. |
| The Court: | Is anybody from Probation here? |
| [Probation Officer]: | I am, Your Honor.  I am not assigned to this case. |
| The Court: | Disclaimer right away, hmm? |
| [Probation Officer]: | Yeah. |
| The Court: | This case was completed in December.  When do you think they will complete the Pre-Sentence Report? |
| [Probation Officer]: | Your Honor, it depends on a lot of factors; like, who's doing the details of the case, et cetera. |
| The Court: | Let's get a date in May and find out who has this case and tell them we'd like to get it done. |

(Tr. of 3/26/09 Proceeding at 3:11-4:4.)  The Court was in search of an explanation for why the PSR had yet to be completed and Arcia knew of at least one reason, to wit: his and Atalay's refusal to schedule a pre-sentence interview with Probation. See supra, at 7 n.1.  Arcia said nothing when the attorney for the government suggested Arcia shed light on the issues and Arcia said nothing when the Court

admonished Probation for failing to move the case forward.[2]  (The Court would

not for months learn that Arcia was, at that time, telling Probation that he was not

Morales' lawyer.[3])  Sentencing was again adjourned, this time to May 18, 2009.

Arcia was told that, despite Atalay's departure from his firm, the firm remained

responsible for completing its representation of Morales.

On May 14, 2009, the government wrote to the Court requesting a further

adjournment on account of the probation department's failure to provide the parties

with a PSR.  (Docket No. 58.)  Sentencing was adjourned to June 26, 2009.

Curious as to why six months had elapsed since conviction yet the probation

department had yet to complete the PSR, the Court contacted the supervising

probation officer and learned for the first time that Morales' pre-sentence interview

was delayed because both Arcia and Atalay denied representing him.

On June 26, 2009, Atalay again requested an adjournment of sentencing,

citing yet again his failure to receive the PSR, which he said was disclosed to

Arcia.  The request was granted and the assigned probation officer faxed a copy of

the PSR to Atalay on that day.  Grace Cucchissi, the assigned prosecutor, also

faxed a copy of the PSR to Arcia's office, at Atalay's request.  Sentencing was

adjourned to September 9, 2009.  The Court's trial schedule necessitated another

---

[2] Arcia's statement in his March 25 Letter that Atalay "has not received a copy" of the PSR was another reason the Court then believed Probation to be primarily at fault for the delay.
[3] Arcia later claimed that he was "being blamed for delays in sentencing which were really caused by the Probation Department."  (See Letter from E. Abel Arcia to Court of 1/14/10.)

adjournment, to October 8, 2009.  On that day, the parties again appeared for

sentencing.  However, Morales had not yet had a meaningful discussion about the

PSR with Atalay or Arcia, and a further adjournment was granted.  Atalay was

instructed to file a notice of appearance by the close of that business day.  The

notice was not filed.  At that same appearance, the Court granted Atalay two weeks

to file any objections to the PSR, and set December 3, 2009 as the date for

sentencing.  No objections were filed as of November 30, 2009.  Recognizing that

nearly a year had elapsed since Defendant's conviction, and fearing additional

communication mishaps based on Atalay's failure to file a notice of appearance, the

Court, on November 30, 2009, issued the following order (the "November 30

Order"):

> In another attempt to prevent further waste of resources, the Court will
> adjourn the December 3, 2009 sentencing sine die.  Arcia is ordered to (1)
> <u>immediately</u> transmit a copy of the within to Atalay, and (2) electronically
> file a brief status report with this Court addressing whether and when
> Atalay was made aware of this order.  Arcia shall file this report by
> <u>December 2, 2009</u>.  Additionally, Atalay is directed to <u>immediately</u> file a
> notice of appearance.

(Docket No. 62 at 3 (emphases in original).)  The Court received neither a status

report from Arcia nor a notice of appearance from Atalay.  Further arousing the

Court's suspicion was a submission filed on December 2, but dated November 30.

The submission, a sentencing memorandum, contained a letter printed on Arcia's

letterhead and bore Atalay's electronic signature, though he was not then a member

of that firm.  (Docket No. 63.)  It also contained character reference letters intended to aid the Court in sentencing Morales.  Strangely, two of these letters are undated, despite being (purportedly) written by physicians.  (<u>See</u> <u>id.</u> at 8-11.)  It appeared to the Court that the submission was prepared after the November 30 Order and in lieu of that order's mandates but that Atalay and/or Arcia wished to give the appearance that the November 30 Order and the sentencing submission crossed paths in the mail. To give such an impression, the submission would have to be dated November 30.

Also strange was the flurry of telephone calls made to Chambers on December 2, the due date for Arcia's status report.   Despite the unambiguous language in the November 30 Order that the December 3 sentencing was adjourned without date, and despite the requirement that communications with Chambers be made in writing absent emergency, a paralegal from Arcia's office made several calls to Chambers expressing "confusion" as to whether sentencing would go forward.   The Court sees no confusion in the November 30 Order's above-quoted language and notes that the Court's calendar was, at the time of these phone calls, available for public viewing and unequivocally displayed an empty calendar for December 3, 2009.

The November 30 Order also contained the following:

The parties shall appear on January 8, 2010, at 9:30am for a hearing.  At this hearing, both Arcia and Atalay shall appear, and each shall show cause why they should not be held in contempt of court or otherwise sanctioned.

(Docket No. 62 at 3.)  Chambers received another flurry of telephone calls on December 22, 2009.  Again, a paralegal from Arcia's office expressed "confusion" as to the January 8, 2010 conference.  In none of the communications with Chambers did any representative of Arcia or Atalay address the failure to comply (or any attempt to comply) with the November 30 Order.

*Show Cause Hearings*

At the January 8, 2010 hearing on the order to show cause, Atalay, Assistant United States Attorneys David Woll ("AUSA Woll"), AUSA Schweder, and USPO Fisher appeared.  Defendant Morales was in quarantine at the Metropolitan Detention Center ("MDC") and, consequently, could not appear.  Arcia neither appeared nor contacted chambers.  The hearing was continued to January 11, 2010 (the next business day) and Atalay and Arcia were again directed to appear.  As demonstrated below, an unintelligible morass of finger-pointing took place at these hearings.

At the first of the two hearings, the Court raised the issue of potential pre-trial deficits in representation.  Specifically, the Court inquired as to whether the parties were in fact negotiating a plea at the time Atalay requested an adjournment of trial based on "the possibility of a disposition."  They were not:

> The Court:    Did you enter into negotiations with the government?
>
> Atalay:    Your Honor, again, I do not recall the exact time sequence so it's impossible for me to make a representation to the court.

|  | I will let the court know that I was in constant conversations with Mr. Morales, and part of the efforts to try and arrive at a disposition dealt with – |
|---|---|
| The Court: | Plea negotiations meaning there are negotiations between the defendant and the government.  I want to find out who you negotiated with and when. |
| Mr. Atalay: | Your Honor, I think to be accurate, it's a misnomer to call it a plea negotiation.  There was an effort to arrive at a disposition. . . . So efforts were made to arrive at a disposition.  These, however, were made with Mr. Morales both by myself and by Mr. Arcia, who remained involved in the case throughout. |

(Tr. of 1/8/10 Proceedings at 11:5-12:1.)  Atalay took the position that, by "exploring the possibility of a disposition," he meant that he "believe[d] that ultimately [Morales] would see the light" and "acquiesce" to a guilty plea.  (Id. at 12:6-16.)

Atalay also represented that he "received [his] marching orders from Arcia" and that it was at Arcia's direction that he failed to file a notice of appearance despite the Court's October 8 and November 30 orders:

| The Court: | I directed you to file a notice of appearance. |
|---|---|
| Atalay: | I understand, your Honor.  I believe there are disputes ongoing between Mr. Arcia and Mr. Morales' family and Mr. Arcia expressed a desire that I do not do that because my understanding is that it would be somehow undermining him in connection with that dispute. |
| The Court: | So I directed you to do something. Mr. Arcia told you to do something else, and you decided to obey Mr. Arcia? |
| Atalay: | Your Honor, your Honor is quite right. |

(Id. at 7:12-22.)

However, Arcia represented that subsequent to Atalay's departure, the two "entered into some type of arrangement where [Atalay] would continue representation of Mr. Morales' case." (See, Tr. of 1/11/10 Proceedings at 8:15-18; see also Letter from E. Abel Arcia to Court of 1/14/10 ("Arcia Letter").) Arcia also claimed to "presume that Mr. Atalay had filed a Notice of Appearance immediately after leaving the employ of this office." (Arcia Letter at 1.) In short, the attorneys' stories could not be reconciled.

And while it was Atalay's understanding that Arcia would handle sentencing, (Tr. of 1/8/10 Proceedings at 5:21-23), Arcia states that "it was agreed . . . that Ernest Atalay would continue the representation of Mr. Morales until sentencing." (See Arcia Letter.)

To explain his absence at the January 8 hearing, Arcia explained to the Court that, given the alleged agreement that Atalay would represent Morales at sentencing, he stopped reading updates to the Court docket and was not aware of any order directing any action on his part whatsoever:

> [W]hat we'd do is [my paralegal] who works in my office, she would take it upon herself to forward [electronic docket updates] to Mr. Atalay, and I have to regrettably admit that we would just do that without actually printing or reading the actual electronic notification. [4]

---

[4] In addition to contradicting Atalay, Arcia also contradicts himself repeatedly. Here, he claims that his office automatically forwarded docket entries to Atalay. Earlier, he told the Court that he "presumed" Atalay had already registered to receive the updates without them needing to be forwarded.

(Tr. of 1/11/10 Proceedings at 8:15-24.)  As a result, Arcia allegedly did not know that the November 30 Order involved him; "never imagined that lapses and/or unjustified delays had occurred in sentencing" (See Arcia Letter); and seemed to not consider himself part of the action at all, despite being the attorney of record. (See Tr. of 1/11/ 10 Proceedings at 10:7-8, ("We left this matter with Mr. Atalay, your Honor, since the time of trial.").)

Arcia's delinquency is not excused by this explanation.  As stated earlier, his March 25, 2009 letter requested the Court's direction on how to proceed in light of Atalay's departure.  The Court provided that direction twice.  (See Docket entry of 3/25/09 ("As Mr. Arcia is still counsel of record in this case and submitted an earlier request to adjourn sentencing, the Court still considers him Mr. Morales' representative."); Tr. of 3/26/09 Conference at 4:10-13 ("Mr. Arcia, there was a lawyer who tried this case, who, I understand, is no longer with your firm. However, your firm is still representing the defendant and there will be somebody here.").) Thus, his explanation that he decided not to keep abreast of the case since trial is unacceptable.  The explanation is also patently untrue, as Arcia filed two letters with the Court on March 25, 2009, evincing some level of awareness of docket activity.

The record is clear that Arcia and Atalay's combined neglect caused a delay in the scheduling of the pre-sentence interview.  The record also reflects countless failed attempts by the United States Attorney's office and the Probation

Department to contact both Arcia and Atalay for a variety of reasons throughout the prosecution of this case. Arcia's statement that he and Atalay "were being blamed for delays in sentencing which were really caused by the Probation Department" is, under these circumstances, absurd. Accordingly, the Court held Arcia in contempt for his failure to abide by the November 30 Order insofar as it directed him to file a status report by December 2, 2009. Arcia was also held in contempt for his failure to appear at the Friday January 8 show cause hearing, and additionally for his late arrival at the January 11 hearing (a hearing necessitated only by his absence on January 8), for a total of three findings of contempt. See City of New York v. Local 28, Sheet Metal Workers Int'l Assoc., 170 F.3d 279, 282-3 (2d Cir. 1999) (contempt appropriate where there is clear and convincing evidence that a party violated a clear and unambiguous order of the court) (citation omitted).

At this point in the proceedings, the Court was prepared to appoint new counsel for Morales. However, upon inquiry, Morales declined the Court's offer, stating that he still preferred to have Atalay to represent him at sentencing. The Court again ordered Atalay to file a notice of appearance and set March 10, 2010 as the new sentencing date.

*Morales' Complaints Warrant New Counsel*

On March 2, 2010, the Court received a letter from Morales, dated March 1, 2010 ("Morales Letter" or "March 1 Letter"). In it, Morales made the following

claims regarding his representation: (1) Atalay did not meet with him at MDC during the year following his conviction; (2) Atalay did not discuss the trial strategy with him prior to the day the trial began and even then not until "at lunch time, at the court house cafeteria;" and (3) Arcia dissuaded him from pursuing a favorable guilty plea, telling Morales that "this was the easiest case he would handle" and promising Morales that he would not be deported. (Morales Letter at 2.) The Morales letter concludes with his intention of "pursuing a formal complaint against Arcia for ineffective counseling." (Id.) The Morales Letter was filed on the docket the same day it was received, but because Atalay still had not filed a notice of appearance, he was unaware of its allegations until he appeared with Morales on March 10.

At the March 10 hearing, Atalay contradicted the Morales Letter, claiming to have spoken to Morales "[p]erhaps three times" between January 10 and March 1. (Tr. of 3/10/10 Proceedings at 3:1-4.) Morales maintained that at the time he wrote the March 1 Letter, he had yet to meet with Atalay, and informed the Court that since the letter, they met only once, on the previous day. (Id. at 1:9-22.) Although Morales was prepared to proceed to sentencing, the Court deemed it best for Morales to be represented by a different attorney, and, to that end, appointed CJA counsel Paul Rinaldo ("Rinaldo") to represent him, replacing Arcia as counsel of record.

Atalay never formally appeared in this action and, for that, the Court finds

two counts of contempt: failure to abide by the November 30 Order and failure to

abide by the Court's January 11 Order.

*Sentencing II*

On May 17, 2010, the case was again called for the purpose of sentencing.

Neither party disputed that the applicable sentence under the United States

Sentencing Commission Guidelines (the "Guidelines") was within the 121- to 151-

month range. However, Morales argued that a downward departure was warranted

on account of Arcia and Atalay's conduct in representing him. Specifically,

Morales argued that, before hiring Arcia, a "government attorney"[5] informed him

of the option of pleading guilty and satisfying the requirements for a safety-valve

sentencing reduction, with the resulting Guideline range of "36 to 48" months.

Thus, Morales, in retrospect, considers the trial to have been a "terrible mistake."

In describing why he went to trial, Morales claimed that Arcia told him that

his case was "easy," and would be disposed of by the government if Arcia

continued to delay its progression. Additionally, Morales told the Court that Arcia

had been paid $25,000 to represent him, and "never discussed anything" with him,

such as reductions in sentence that might have been available had he pled guilty. In

---

[5] The Court assumes the term "government attorney" refers to the CJA attorney initially
assigned to represent Morales before his family retained Arcia.

short, Morales argued that he did not engage in any meaningful trial strategy with Arcia, despite spending $25,000 to retain him. [6]

As to Atalay, Morales similarly claimed the total absence of pre-trial preparation. Indeed, Morales claimed that, a week prior to trial, Arcia told him that Atalay would be his trial counsel because Atalay was more proficient in English than Arcia. Morales again alleged that he did not meet with Atalay to discuss trial strategy until after the jury was selected, when the two had lunch at the Courthouse Café. Morales denied remitting any payments to Atalay.

AUSA Cucchissi contradicted Morales' version of events and recalled being present at the September 4, 2008 arraignment on the superseding indictment. Cucchissi informed the Court that, at that arraignment, Atalay showed Morales a chart of the various plea agreements offered up to that point, which made clear (1) that each successive agreement was less favorable to Morales; and (2) the seriousness of the minimum guideline sentence following a conviction. Cucchissi recalled being told by Atalay that Morales was uninterested in pleading guilty on account of his fear of deportation after conviction.

While there is a dispute as to whether and when Morales was offered various plea agreements, Morales has since accepted responsibility for his decision

---

[6]  Morales later stated that he still owes Arcia $5,000. It is unclear whether this $5,000 ought to be subtracted from the $25,000 he said he paid, or instead reflects a total fee of $30,000. The distinction is of minimal consequence to the Court's decision to impose sanctions, although it may shed light on the alleged "disputes" between Morales' family and Arcia. (See supra, at 13.)

to go to trial. At this stage, the Court considers Arcia and Atalay's alleged failure to properly advise him of his options as relative to the seriousness of their misconduct, and not to the existence of it.

The Court sentenced Morales to a below-guideline sentence of 89 months, a figure slightly below the average of the statutory minimum of 60 months and the Guideline minimum of 121 months.

*Sanctions*

The Court is appalled at the lack of both commitment and zeal exhibited by Arcia and Atalay in their representation of Morales. I find their conduct not only contemptible but also contumacious. While on paper it would appear that Morales had not one but two lawyers working for him, he effectively has had no one, at least since his conviction. Instead of being a client represented by an attorney, he became an abandoned and unrepresented victim.

Short of genuflection, the Court has exhausted all merciful methods of seeking Arcia's and Atalay's compliance with the rules specifically designed to both provide the defendant with a speedy and fair trial and to prevent the vast waste of resources expended each time this three-year-old case was called and its progression stymied by their actions. Those efforts having failed and this action having required more judicial intervention than matters far more complex, the Court is compelled to pursue the remedy of sanctions. To that end, and pursuant to

the Court's inherent power to discipline attorneys appearing before it, <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991), <u>United States v. Seltzer</u>, 227 F.3d 36, 42 (2d Cir. 2000), the Court finds that the record contains clear and convincing evidence that (1) neither Arcia's nor Atalay's representation of Morales was diligent, as required by Rule 1.3 of the Rules of Professional Conduct; (2) Arcia violated Rule 1.16 of those Rules by unilaterally terminating his representation of Morales; (3) Atalay violated Rule 7.5 of the Rules in using Arcia's letterhead after his separation from the firm in a manner that caused confusion to the Court; and (4) both Arcia and Atalay violated Rule 8.4 in repeatedly ignoring Court orders.

The Court hereby sanctions Arcia in the amount of $7,500, and Atalay in the amount of $5,000, payable to the Clerk of the Court no later than <u>July 11, 2010</u>. Additionally, the Court will forward both this decision and Morales' Letter to the Second Judicial Department of the Appellate Division, through which both attorneys became admitted to practice law in the State of New York.

Finally, because it is unclear what, <u>if any</u>, legal services Arcia provided to Morales, both Arcia and Atalay shall, <u>within 30 days of entry of this order</u>, submit for <u>in camera</u> inspection, copies of any and all retainer agreements or other documents memorializing Arcia and/or Atalay's representation of Morales, and copies of any and all bills, invoices and contemporaneous time records pertaining to work performed and/or expenses incurred in connection with Arcia's and/or Atalay's representation of Morales.  Arcia and Atalay shall serve separate

submissions to the Court.  These submissions will be used by the Court to determine whether further sanction is appropriate.  See, e.g., United States v. Small, 2007 WL 2293028, at *6 (E.D.N.Y. Aug. 9, 2007) ("[A]n attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered.") (collecting cases).

Because "those who do not hear, must feel,"[7] Arcia and Atalay should expect that any delays in executing this order will be met with further – and far stiffer – sanctions.

**SO ORDERED.**

Dated: June 11, 2010                      _____/s_____
        Brooklyn, New York                Sterling Johnson, Jr., U.S.D.J.

---

[7] See John Mendes, COTE CI COTE LA 256 (1986).